# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILL D. THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-17-1036-D |
| OKLAHOMA LAND HOLDINGS, LLC, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion to Dismiss [Doc. No. 11], to which Plaintiff has filed his response in opposition [Doc. No. 13]. The matter is fully briefed and at issue.

## BACKGROUND[1]

Defendants Danick Resources, Inc. ("Danick") and Schlachter Operating Co. ("Schlachter") engaged in oil and gas exploration in Oklahoma, including but not limited to the "STACK" play in the Anadarko Basin, with Canadian and Kingfisher Counties as core counties. The geographic area of the STACK play was not limited

---

[1] The following narrative is taken from the Complaint, and, as stated below, where a defendant asserts a facial attack on the sufficiency of a complaint as it relates to subject matter jurisdiction, the Court accepts the veracity of all well-pleaded facts and views both the facts and all reasonable inferences in the light most favorable to the plaintiff. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Legal arguments or conclusions, however, were not considered or accepted as true. *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

to Canadian and Kingfisher Counties, but included mineral acres in Blaine, Major, Garfield, Ellis, Dewey, Logan, and Woodward Counties (the "Expanded STACK Area"). Defendants formed Oklahoma Land Holdings, LLC ("OLH") as a joint venture to establish a pool of money to acquire leases in the Expanded STACK Area and sell these leases collectively to the highest bidder.

In furtherance of their endeavor, Defendants created a sales and marketing document—the "Prospectus"—describing opportunities in the Expanded STACK Area to attract investors for its lease fund. OLH publicly marketed the Prospectus to numerous potential investors without requiring them to sign a confidentiality agreement. During the same time OLH was offering the Prospectus to potential investors, Plaintiff and another individual, Andy Ashby ("Ashby"), formed a partnership ("the Partnership") to acquire and explore mineral leases for investment. The Partnership evaluated numerous prospects and eventually decided to focus its activities in the Expanded STACK Area.

Defendants asked whether Plaintiff would be interested in evaluating certain properties in the Expanded STACK Area. Plaintiff expressed interest, and Defendants offered to share the Prospectus with Plaintiff, provided he sign a Confidentiality and Non-Circumvention Agreement (the "Agreement"). When Plaintiff stated he could not sign the Agreement on behalf of the Partnership or a

new company which Plaintiff and Ashby intended to form, Defendants suggested he sign it individually, to which Plaintiff agreed.

After reviewing the Prospectus, Plaintiff discovered the Area of Mutual Interest (AMI) (which, according to the Agreement, consisted of 120,000 acres in Ellis, Dewey, and Woodward Counties) had not been specifically identified by property descriptions. Defendants insisted the AMI included 100% of Ellis, Dewey, and Woodward Counties, an area of approximately 2.2 million acres. Plaintiff told Defendants the Prospectus was not useful to a company engaged in oil and gas exploration because the information therein was primarily a collection of publicly available information designed to target individual investors to contribute to a pool of money to lease properties.

Defendants stated they wanted to be the leasing agent for Plaintiff and Ashby's new company. Plaintiff told Defendants the new company had not yet been formed and the Partnership already had a leasing agent. The Partnership's leasing agent began evaluating and acquiring options for mineral leases in the Expanded STACK Area, including leases in Ellis County, which were included in schematics in the Prospectus. The Partnership offered the options to OLH at cost. OLH rejected the offer, threatened to sue Plaintiff, and reiterated Defendants' desire to be the leasing agent for Plaintiff's new company.

3

On July 16, 2017, BMR II, LLC, a Colorado limited liability company ("BMR II" or the "Company"), was organized to replace the Partnership. Its business purpose was to acquire options, explore, and operate mineral leases in the Expanded STACK Area. Plaintiff and Ashby had an opportunity to borrow money from BMR II to purchase an ownership stake in the Company; they also expected to profit proportionately to their respective ownership interests if the value of the Company went up. Plaintiff was offered the position of Vice President with BMR II and agreed to borrow $1.85 million dollars from BMR II with the expectation his investment would substantially grow because of the anticipated appreciation in the value of mineral interests in the Expanded STACK Area. However, Defendants continued to assert their rights under the Agreement against Plaintiff and threatened to sue. In response, BMR II withdrew its offers to make Plaintiff Vice President, loan Plaintiff money for investment purposes, and disassociated itself from Plaintiff.

On October 26, 2017, Plaintiff filed the instant suit. He contends he was induced by Defendants into signing the Agreement in that: (1) Defendants falsely represented the Prospectus contained certain, valuable proprietary information which was not publicly available concerning the Expanded STACK Area and information for an oil and gas exploration company wanting to acquire mineral leases in the Expanded Stack Area; (2) Defendants represented that the Partnership and BMR II would not be bound by the Agreement and Plaintiff's relationship with

4

BMR II would not be adversely affected; and (3) Defendants concealed their position that the Agreement applied to 100% of Ellis, Dewey, and Woodward Counties.

Plaintiff also contends the Non-Compete and Non-Circumvention provisions of the Agreement fail for lack of consideration because information contained in the Prospectus was non-proprietary and publicly available, and that the parties never had a meeting of the minds because Defendants intentionally or negligently misled him concerning the geographic scope of the AMI and the nature of the information in the Prospectus. Lastly, Plaintiff contends Defendants unlawfully interfered with his prospective economic opportunities with BMR II. He requests a declaratory judgment that the non-compete and confidentiality portions of the Agreement are void and unenforceable under Oklahoma law in that such provisions are vague, overly broad, OLH failed to take reasonable steps to protect the information, and such information is publically available. Plaintiff also seeks a declaration that, under Texas law, the Agreement is unenforceable for failure to provide an adequate property description for the AMI. Plaintiff also asserts claims for intentional interference with prospective economic advantage,[2] and fraudulent inducement.

---

[2] Plaintiff earlier withdrew his claim for negligent interference with a prospective economic advantage.

Defendants move to dismiss the Complaint on two grounds. First, they contend Plaintiff has failed to plead facts sufficient to invoke diversity jurisdiction[3] and the Complaint fails to state a claim upon which relief can be granted.

## STANDARD OF DECISION

Subject matter jurisdiction is a threshold issue the Court considers first. *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1254 (10th Cir. 2015). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id*. In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id*. Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id*.

---

[3] Although Defendants couch this argument in terms of lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, diversity jurisdiction relates to subject matter jurisdiction. Thus, the proper authority for such a challenge is Rule 12(b)(1).

Here, Defendants' motion constitutes a facial attack because they challenge the sufficiency of the Complaint's allegations as they relate to the jurisdictional amount.

**DISCUSSION**

Defendants contend diversity jurisdiction is lacking because the Complaint fails to provide sufficient facts showing the amount in controversy exceeds $75,000. For purposes of determining the amount in controversy, the amount claimed by the plaintiff controls if the claim is apparently made in good faith. *Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). When federal subject matter jurisdiction is challenged based on the amount-in-controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Adams*, 225 F.3d at 1183.

"The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount." *Id*. (citing *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994)). "A plaintiff's allegations in the complaint alone can be sufficient to make this showing. 'Although allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor.'" *Id*. (quoting *State Farm Mut. Auto. Ins. Co. v.*

7

*Narvaez*, 149 F.3d 1269, 1272 (10th Cir. 1998)). Claims against multiple defendants may be aggregated where the defendants are jointly liable to the plaintiff. *Swiech v. Fred Loya Ins. Co.*, 264 F. Supp. 3d 1113, 1129-30 (D.N.M. 2017).[4] Also, "[p]unitive damages may be considered in determining the requisite jurisdictional amount." *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003).

"There is a strong presumption favoring the amount alleged by the plaintiff." *Id.* at 1216. Consequently, where the plaintiff has alleged that the amount-in-controversy requirement is satisfied, dismissal is generally warranted only where (1) a contract limits the possible recovery, (2) the law limits the amount recoverable, or (3) the plaintiff commits an obvious abuse of federal court jurisdiction. *Id.* at 1216-17.

The Complaint alleges Defendants' actions prevented the Plaintiff from: (1) becoming a Vice-President of BMR II, (2) borrowing $1.85 million from BMR II, (3) purchasing an ownership interest in BMR II, and (4) participating in the

---

[4] To this end, "if a single plaintiff—regardless whether he or she is the only plaintiff who will share in the recovery—can recover over $75,000.00 from a single defendant—regardless whether the defendant has jointly liable co-defendants—then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III,' … meaning that they 'derive from a common nucleus or operative fact.'" *Swiech*, 264 F. Supp. 3d at 1130 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

acquisition, exploration, and operation of mineral leases in the Expanded STACK area. In this regard, Plaintiff's tortious interference and fraud claims each seek damages in excess of $75,000, plus punitive damages. In light of these allegations, there is a strong presumption that the $75,000 amount-in-controversy requirement is satisfied.

Defendants nonetheless argue that the Complaint only sets forth conclusory allegations of pecuniary harm, which the Court must disregard in determining whether subject matter jurisdiction exists. The Court disagrees. Defendants' arguments rest on an overly narrow reading of Plaintiff's claims for relief. Based on the various allegations of damages alleged by Plaintiff, particularly, Plaintiff's allegations of loss exceeding one million dollars, the Court has no difficulty finding that Plaintiff has shown it is not legally certain that his claims against Defendants are for less than the $75,000 jurisdictional amount. Consequently, the amount-in-controversy requirement is satisfied and Defendants' motion to dismiss is denied on this issue.

However, the Court finds subject matter jurisdiction *is* lacking on another basis. Plaintiff's Complaint alleges that "Defendant, Oklahoma Land Holdings, LLC ("OLH") is an active limited liability company organized and existing under the laws of the State of Texas ….." Compl. ¶ 5. For purposes of diversity jurisdiction, an LLC's citizenship is determined by reference to the citizenship of each and every

one of its members. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1235-36 (10th Cir. 2015). For each member of an LLC that is itself an LLC or partnership, its citizenship must be traced through however many layers of members or partners there may be, and failure to do so can result in dismissal for want of jurisdiction. *See Hicklin Engineering, LLC v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("A federal court thus needs to know each member's citizenship, and if necessary each member's members' citizenships."). In this regard, Plaintiff fails to identify OLH's member(s) as to enable this Court to properly determine whether subject matter jurisdiction exists.[5] Although it may be presumed from the Complaint that the only members of OLH are Defendants Danick and Schlachter—both of whom are Texas corporations—federal courts are *never* presumed to have subject matter jurisdiction and the complaint must adequately demonstrate the basis for federal jurisdiction. *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 859 (10th Cir.

---

[5] Although Defendants did not seek dismissal on this ground, the Court "has an independent obligation to ensure that it has subject matter jurisdiction." *Tormey v. Morning Dove, LLC*, No. CIV-12-1328-D, 2013 WL 1450513, at *1 (W.D. Okla. Apr. 9, 2013) (quoting *Jefferson County School District R-1 v. Elizabeth E.*, 488 F. App'x 330, 331 (10th Cir. 2013)). "[N]o action of the parties can confer subject-matter jurisdiction." *Id*. (quoting *Dine Citizens Against Ruining Our Environment v. Klein*, 439 F. App'x 679, 683 (10th Cir. 2011)); *Tuck v. United Services Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) ("[L]ack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.") (citation omitted).

1986) ("Subject matter jurisdiction is never presumed.").[6] Thus, dismissal is appropriate on this independent basis.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss [Doc. No. 11], on the grounds asserted, is **DENIED**. The Court, however, sua sponte dismisses the Complaint as set forth herein. Plaintiff's Complaint is hereby **DISMISSED** without prejudice to amendment. Because the Court dismisses the Complaint for lack of subject matter jurisdiction, it declines to consider the remaining arguments of Defendants' motion. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (noting that "dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original). Plaintiff may file an amended complaint within **fourteen (14) days** of this Order.

---

[6] The fact OLH's citizenship is unascertainable is exacerbated by Defendants' failure to file a disclosure statement in accordance with LCvR 7.1.1, which states, in part that "[a] party formed as a limited liability company ("LLC") or partnership shall, concurrently with its first filing in the case, file a separate 'Disclosure Statement Identifying Constituents of LLC or Partnership,' identifying the LLC's members or the partnership's partners, as applicable. If any party has invoked federal jurisdiction on the basis of diversity of citizenship with the LLC or partnership, the disclosure statement shall also affirmatively state whether any of the members or partners are citizens of the adversary's alleged state of citizenship."

**IT IS SO ORDERED** this 10th day of April 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE