IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA LAND HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1036-D |
| | ) |
| BMR II, LLC and ANDREW M. ASHBY, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Defendants[1] BMR II, LLC, and Andrew M. Ashby ("Defendants") bring before the Court a Motion to Strike First Amended Expert Report of Jon Stromberg [Doc. No. 81]. This Motion remains unopposed. Defendants had earlier filed a Motion seeking the exclusion of Jon Stromberg's Initial Report [Doc. No. 74]. Plaintiff Oklahoma Land Holdings, LLC, ("OLH"), filed a Response [Doc. No. 103] in opposition, to which Defendants have replied [Doc. No. 109].

**BACKGROUND**

The facts of this case have been recounted elsewhere, but generally involve a dispute over business transactions and investment opportunities in Oklahoma oil and gas exploration. The Court entered an initial Scheduling Order [Doc. No. 44], and a Rule 26(f)

---

[1] At one point during this litigation, Defendants herein were designated as Third-Party Defendants. Plaintiff herein was one of several Defendants also designated as Counter-Plaintiffs and Third-Party Plaintiffs. Following the dismissal of several claims and parties, the case style was modified to reflect the accurate burdens and relationships of the parties. *See* Motion to Modify Case Style [Doc. No. 86]; Order [Doc. No. 98]. This Order reflects the correct relationships and modified case style.

1

discovery conference in this case was held on July 6, 2018. Pursuant to that Scheduling Order, OLH was to provide its initial disclosures by July 20, 2018, including: "a computation of each category of damages claimed . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(A)(ii); 26(a)(1)(C).

On December 11, 2018, the Court entered an Amended Scheduling Order [Doc. No. 52]. That Amended Scheduling Order extended OLH's deadline to disclose its experts and produce its expert reports from December 14, 2018 to January 14, 2019. *Id*. On January 14, 2019, OLH produced its Initial Stromberg Report [Doc. No. 81, Ex. 3, OLH's Expert Designations; Ex. 4, Initial Stromberg Report]. On February 8, 2019, Mr. Stromberg was deposed. During his deposition, Mr. Stromberg admitted that he was not given documents to review in preparation for his expert testimony and opinions until three days prior to OLH's deadline to produce its expert report. He also admitted that he spent only 2.5 hours discussing this case with Mr. Luis Castillo, the in-house geologist at Danick Resources, Inc., on Saturday, January 12, 2019.

The Initial Stromberg Report was then drafted and produced by the following Monday, January 14, 2019. [Doc. No. 81, Ex. 4, Initial Stromberg Report; Ex.5, Excerpts of Jon Stromberg Dep. 71:16-18, 137:25-138:7]. Defendants argue that in addition to the hasty preparation of the report, Mr. Stromberg's math was based on a host of unreliable assumptions. Armed only with these assumptions, Defendants contend, Mr. Stromberg calculated OLH's damages in excess of $30 million. *Id*. Defendants further argue that the Initial Stromberg Report failed to include "a complete statement of *all* opinions" and the

2

"basis and reasons for them." Motion at 3. Further, Defendant's assert that OLH's disclosure of the Initial Stromberg Report did not contain or include all the "facts or data considered" and "any exhibits that will be used to summarize or support" Mr. Stromberg's opinions. *Id*. And lastly, Defendants assert that OLH did not timely make full expert disclosures pursuant to the Amended Scheduling Order [Doc. No. 52]. It wasn't until May 5, 2019, four months after the January 14 deadline, that OLH produced the Amended Stromberg Report [Doc. No. 81, Ex. 6, Amended Stromberg Report].

## DISCUSSION

The Court will first address the unopposed Motion to Strike [Doc. No. 81] and will next resolve Defendants' *Daubert* Motion to Exclude [Doc. No. 74], considering all related filings. Neither party has requested a hearing, nor is one strictly required. *Goebel v. Denver & Rio Grande* W. R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000); *United States v. Call,* 129 F.3d 1402, 1405 (10th Cir. 1997) (noting that *Daubert* does not require a hearing).

**I.** **Defendants' unopposed motion to strike is granted, as the amended report was untimely and no good cause for the delay has been shown.**

As Defendants note, the directives of Rule 26 are "mandatory." *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 429 (N.D. Okla. 2008).

Rule 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

3

Rule 37(c)(1) bars the use of a witness or information that was not disclosed as required by Rule 26(a), unless the offending party can establish that the failure to comply with the Rule is either substantially justified or harmless. *Kern River Gas Transmission Co. v. 6.17 Acres*, 156 F. App'x 96, 101 (10th Cir. 2005). Rule 37(c) is a self-executing sanction. *Kern River*, 156 F. App'x at 102. It is the burden of the offending party to show substantial justification or harmlessness. *See Cohlmia*, 254 F.R.D. at 429–30. "The determination of whether a Rule 26(a) violation is [in fact] justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

The following factors are relevant: (1) prejudice or surprise to the party against whom the report is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and, (4) the moving party's bad faith or willfulness. *Id*.

The Court ordered full expert disclosures be made by January 14, 2019. Amended Scheduling Order [Doc. No. 52]. It wasn't until May 5, 2019—four months after the January 14 deadline, and in violation of Rule 26(a)—that OLH produced the Amended Stromberg Report.

The facts here are unlike *103 Investors I v. Square D. Co.*, where the Tenth Circuit found a district court abused its discretion in refusing to consider a rebuttal expert report on the basis on untimeliness. 372 F.3d at 1216. In *Square D*, the expert report was technically untimely. *Id*. In that case, however, the district court had granted the opposition extensions of time to file its expert reports. *Id*. The district court did not grant

4

parallel extensions for the filing of rebuttal reports. *Id.* Therefore, filing a timely rebuttal report would have been impossible, as the opposition would have been attempting to rebut something it had not yet had the opportunity to see. *Id.*

That is plainly not the case here. The Amended Stromberg Report is not rebutting any information that was not previously available. No leave of Court was sought, and no relevant extensions of time were granted. The filing of the Amended Report one day before the deadline for filing *Daubert* and dispositive motions prejudiced Defendants, who moved to have the Amended Report stricken. Their Motion to Strike [Doc. No. 81] remains unopposed, and as such, no good cause for the untimely production of the report has been established. *Cf. Martinez v. Target Corp.,* 384 F. App'x 840, 846 (10th Cir. 2010) ("The district court did not abuse its discretion in rejecting as insufficient Martinez's explanation for failing to file a timely motion to amend her complaint.").

Pursuant to Rule 37, Defendants' Motion to Strike the Amended Stromberg Report is granted. Rule 37 permits the court "in addition to or in lieu of [excluding the evidence]" to impose sanctions, including attorney's fees. FED. R. CIV. P. 37(c)(1). The Court, however, finds movants fall short of establishing they are entitled to attorney's fees and costs incurred in addressing the untimely report. Certainly, Defendants were harmed by Plaintiff's failure to follow the rule. The prejudice suffered, and the conduct described—undisputed though it may be—does not establish the need for additional reprimand. *See Hirpa v. IHC Hosps., Inc.,* 50 F. App'x 928, 932–33 (10th Cir. 2002) (finding no abuse of discretion in declining to award attorney's fees where "there was insufficient prejudice or surprise to justify an award").

5

## II. Defendants' motion to exclude the initial report under *Daubert* is granted.

Before filing their Motion to Strike [Doc. No. 81], Defendants moved under *Daubert* to exclude Jon Stromberg's opinions and testimony on OLH's damages [Doc. No. 74].

Courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). A district court also has broad discretion to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Federal Rule of Evidence 702 and the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael* govern the admissibility of expert testimony. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n.1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho*, it is not admissible under Rule 702").

Rule 702 imposes upon the trial judge an important "gate-keeping" function for the admissibility of expert opinions. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b)      the testimony is based on sufficient facts or data;

      (c)      the testimony is the product of reliable principles and methods; and

      (d)      the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In considering whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion. If so qualified, the Court must then determine whether the expert's opinion is reliable—under the principles set forth in *Daubert* and *Kumho Tire*—and relevant, in that it will assist the trier of fact. *Square D Co.*, 470 F.3d at 990; *Ralston v. Smith & Nephew Richards*, Inc., 275 F.3d 965, 969 (10th Cir. 2001); *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006).[2]

"The *Daubert* factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009). The inquiry is always highly fact-specific, and no one factor is outcome determinative.[3] Finally, when the testimony of an expert is challenged, the proponent of

---

[2] The reliability of an expert's methodology is evaluated with the following non-exhaustive factors: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Kumho Tire*, 526 U.S. at 149–50; *Square D.,* 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593–94).

[3] *See* FED. R. EVID. 702, advisory committee's note to 2000 Amendments, which identifies other relevant factors in determining whether expert testimony is sufficiently reliable for a jury to consider.

the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

    a. *The expert is qualified to render an opinion, as he has extensive experience and training in the particular matters his testimony addresses.*

Defendants argue that although the expert in this case has the qualifications of a seasoned petroleum engineer in the abstract, he is not qualified to testify about the specifics of this case, with which he is unfamiliar. Motion to Exclude at 18. Plaintiff responds that the expert has ample, demonstrated "knowledge, skill, experience, training, or education." Response at 5.

In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241. It is well-settled that a proposed expert "should not be required to satisfy an overly narrow test of his own qualifications." *Gardner v. General Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974).

Indeed, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009), *aff'd*, 405 F. App'x 296 (10th Cir. 2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994), *cert. denied*, 513 U.S. 1111 (1995)); *see also Ralson v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) ("merely

possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."); *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194-95 (10th Cir. 1992) (affirming trial court determination that an attorney with some education and training in the field "was not qualified" as an expert in the securities area).

Accordingly, an "expert's qualifications must be both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702); and (ii) specific to the matters he proposes to address as an expert." *Graves*, 675 F. Supp. 2d at 1092; *see also Gardner*, 507 F.2d at 528 (proposed expert "should not be required to satisfy an overly narrow test of his own qualifications").

It is undisputed that the expert in this case is qualified in the abstract. He is a licensed professional petroleum engineer, with over fifty-four years of experience, registered in both Oklahoma and Texas. Response, Ex. 1 ¶ S. The expert has served as vice president for an oil and gas exploration and production company, and in that capacity, he evaluated and valued projects and presentations, like those at issue in this case. *Id.* ¶ U; Ex. 2, at 2. He testified that he prepared and evaluated proposals similar to the one at issue here. *See id.* Ex. 1 ¶ V. He has testified as an expert hundreds of times before. *Id.* ¶ W.

In evaluating the expert's qualifications, however, the Court essentially must decide whether he has sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case. *Kumho*, 526 U.S. at 156. Upon examination of the expert's report, affidavit, and deposition testimony, the Court concludes that the expert's qualifications do encompass those required to proffer the opinions offered here.

Our facts are unlike those in *Milne v. USA Cycling, Inc.*, where the Tenth Circuit affirmed the trial court's exclusion of the testimony of the plaintiffs' expert. 575 F.3d 1120, 1133–34 (10th Cir. 2009). Although the expert had experience organizing and supervising paved-road bike races, the trial court concluded his experience was insufficient to qualify him to testify about mountain bike races. *Id.* at 1133. The prevailing rules and practices of mountain bike races are different from those at traditional road races. *Id.* The plaintiffs' expert had not published any articles about mountain bike racing. *Id.* He testified that as a police officer, he had investigated hundreds of vehicle-bicycle collisions, but there was no indication any of those took place on a dirt road or in the course of a race. *Id.*

To the contrary, there is no relevant subspecialty with which the expert here is unfamiliar. He certainly possesses the relevant qualifications to help the jury decide particular issues in this case, and this fact is witnessed by the questions Defendants asked of the expert during his deposition. *Graves*, 675 F. Supp. 2d at 1092. The expert's qualifications are adequate in a general, qualitative sense and specific to the matters he proposes to address.

 b. *The expert's opinion is unreliable, and therefore inadmissible under Daubert.*

Whether the qualified expert's opinion is reliable, however, is a different matter, and also a threshold question for the Court to resolve. Defendants argue that the expert's opinions are fraught with reliability issues, based on faulty assumptions, and largely the product of guesswork. Motion at 20–23. Plaintiff counters that these arguments go to the weight of the expert's testimony and not his reliability. Response at 18.

Reliability questions may concern the expert's data, method, or his application of the method to the data. *See Mitchell v. Gencorp Inc*., 165 F.3d 778, 782 (10th Cir. 1999); *see also* FED. R. EVID. 702 (noting that the testimony must be "based upon sufficient facts or data" as well as "the product of reliable principles and methods" and the expert must have "applied the principles and methods reliably to the facts of the case"). The party offering the expert testimony "must show that the method employed by the expert . . . is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge v. Cotter, Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003). "Under Daubert, any step that renders the expert's analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782. In making a reliability determination, "[g]enerally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge*, 328 F.3d at 1222.

The expert here admitted he developed his opinions expressly for the purpose of testifying. He is not testifying about matters growing naturally and directly of his research. *See* Motion to Exclude, Ex.3, at 40:8–13 ("we were doing all of this sort of on the run because…I didn't get the information until the 12th and we had to have it ready by the 14th"). Without evidence to show the likelihood that his underlying assumptions would hold true, the expert made projections, failing to also engage in any factual analysis to support the projections. *Id*. at 73:1–8 (agreeing that a fact established in the record would have changed his opinion). The expert admits during his deposition testimony that his

11

assumptions are unreasonable. *See id*. at 227:7–17; 19–25 ("It's not a reasonable assumption to make . . . No, there's not enough drilling rigs in Oklahoma to do it.").

The expert here prepared hastily, assumed best-case scenario, failed to account for any alternatives, and admits to not knowing where the data on which he is relying was obtained. Motion to Exclude, Ex.3, 75:14–24; 240: 12; 255:7–12, 245:5–20 (stating that "[a well] could be on the moon"). The totality of the circumstances in this case makes the testimony unreliable. *See Fernandez v. Cent. Mine Equip. Co*., 670 F. Supp. 2d 178, 185–87 (E.D.N.Y. 2009) (finding that the expert's opinion was unreliable where the expert, among other things, did not inspect the subject drill, did not conduct any studies or analyses in developing his opinion, and did not take any steps to verify his opinion). The expert admits that facts—verifiable in the record—would have changed his conclusions. *See* Motion to Exclude, Ex.3 73:1-6; 76:18-21, 78:7-20, 80:6-22, 113:6-114:13, 119:7-120:7.

Plaintiff essentially concedes that the expert's evaluations were not based on first-hand knowledge. Response at 10; *see also* Motion to Exclude, Ex.3 at 251: 11–12 ("I have not evaluated any of the existing wells for this case."). It points to *United States v. Chapman* in support of the fact that the offered testimony is nevertheless reliable. 839 F.3d 1232 (10th Cir. 2016). But in line with *Chapman* is the idea that the expert's reasoning and methodology must be sound. *See id*. at 1238. In *Chapman*, the Tenth Circuit affirmed a district court's decision to allow expert testimony, explicitly concluding that even though an expert had never met the patient at issue his testimony was reliable. *Id*. This was so because the expert opined only as to whether the conduct of the patient, described to him by others, was consistent with the conduct exhibited by victims of domestic abuse. *Id*.

This case is unlike *Chapman* in that our expert's application of what might very well be sound methodology is unreasonable. He relies on admittedly unreasonable assumptions and concedes his findings would have been different had accurate data been made available to him. The link between his conclusions and the data from which he purportedly arrived at such conclusions is tenuous at best. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47 (1997) (reversing the court of appeals and holding that it was within the discretion of the district court to conclude that the studies upon which an experts relied were insufficient to support the expert's conclusions).

The Court's "gatekeeper" role for screening expert evidence is meant to ensure that the evidence is not only relevant, but reliable. The expert's opinion in this case is unreliable and thereby improper for consideration.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike First Amended Expert Report of Jon Stromberg [Doc. No. 81] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' *Daubert* Motion to Exclude Jon Stromberg's Initial Report [Doc. No. 74] is **GRANTED**.

**IT IS SO ORDERED** this 13th day of March, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge